UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT EDWARD-OWEN GURITZ,

                Petitioner,

v.

JAMES CORRIGAN,

                Respondent.

_____/

Case No. 2:24-cv-48

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>Discussion</u>

## I.      Factual Allegations

Petitioner Robert Edward-Owen Guritz is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Van Buren County Circuit Court, Petitioner was convicted of one count of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d(1)(b), and one count of assault with intent to commit criminal sexual conduct involving sexual penetration, in violation of Mich. Comp. Laws § 750.520g(1). *People v. Guritz*, No. 359499, 2023 WL 2051943, at *1 (Mich. Ct. App. Feb. 16, 2023). The trial court sentenced Petitioner to concurrent terms of 120 months to 15 years' incarceration for the CSC-III conviction and 36 months to 10 years' incarceration for the assault conviction. *See id.*

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals, raising the following two claims of error: (1) the trial court erred by allowing the admission of the complainant's hearsay statement that Petitioner had assaulted her; and (2) the evidence was insufficient to sustain his convictions. (ECF No. 1-1, PageID.41.) The Michigan Court of Appeals set forth the following facts underlying Petitioner's convictions:

> This case arises out of the sexual assault of the complainant, BC, at a bonfire held at a farm on the evening of July 1, 2017. BC drove her vehicle to the farm with friends. Once there, BC consumed alcohol and became intoxicated. There were occasions when she stumbled and was assisted by friends. [Petitioner] agreed to drive his brother to the bonfire and act as his designated driver, but he did not know the bonfire attendees. [Petitioner's] brother had attended school with BC and her friends.
>
> BC went to her vehicle to charge her phone, and a group of friends were present. After an argument between two friends, everyone else left the car. BC was in her vehicle alone when [Petitioner] knocked on the window. BC testified that [Petitioner] forced her to engage in oral sex three different times. [Petitioner] also demanded sexual intercourse from BC, but she said no and offered that she was menstruating to further dissuade[1] him. Despite her disclosure, [Petitioner] put his hands up BC's skirt and attempted to pull her out of the driver's seat of her car.

[Petitioner] left BC in her car crying. BC telephoned a friend and disclosed that she had been forced to engage in oral sex. BC's friend, CW, found her in her car, crying and hysterical, and offered to drive her home. Initially, BC declined to report the sexual assault because she was embarrassed and did not want to disclose her underage drinking to her parents and the police. Two days after the assault, BC reported it to the police. By that time, BC washed the clothes she had worn to the bonfire, showered, and ate.

[Petitioner] testified that he had never met BC before the bonfire. He noticed that BC and her friend MP were visibly intoxicated. He and his brother helped BC to her feet. [Petitioner] observed BC and her friends walk in the direction of her vehicle but he did not follow them to the car. Later that night, one of BC's friends asked [Petitioner] to check on her. [Petitioner] testified that it was time consuming to locate BC because of the number of vehicles at the farm, the darkness, and his unfamiliarity with her vehicle.[2] [Petitioner] found BC in her vehicle and knocked on the window, and she kind of fell out the door. He touched her on the shoulder to push her back into the car. BC was hysterical and crying. She was still intoxicated and smelled of alcohol. During this brief interaction, [Petitioner] denied engaging in any sexual activity or inappropriately touching BC. [Petitioner] also presented testimony from the crime lab forensic scientist that male deoxyribonucleic acid (DNA) was not detected on the swab taken from BC.

_____

[1] CW drove BC to the home where she was "dog[-]sitting," while his girlfriend followed in CW's car.

[2] A friend of BC's testified that it took a long time for [Petitioner] to check on BC and return to the bonfire.

*Guritz*, 2023 WL 2051943, at *1. On February 16, 2023, the court of appeals rejected Petitioner's claims of error and affirmed his convictions and sentences. *See id.* The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on June 27, 2023. *People v. Guritz*, 991 N.W.2d 558 (Mich. 2023).

On April 1, 2024, Petitioner filed his federal habeas corpus petition, raising the following two grounds for relief:

I.      [Petitioner's] right to a fair trial was violated when the trial court allowed the admission of [the] complainant's hearsay statement that [Petitioner] assaulted her. No exception to hearsay rule applied. The details of what was said were later proven incorrect. The admission of hearsay unfairly bolstered [the complainant's] version of events in what was a pure

credibility contest and it denied [Petitioner] the right to a fair trial. As a result a new trial is required.

II.      [Petitioner] contends that the evidence is insufficient as a matter of law and that his two convictions should be vacated. U.S. Const. Am. XIV, Const. 1963, Art. 1, §§ 17, 20.

(Pet., ECF No. 1, PageID.15–16.)

## II.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal

law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A. Ground I—Admission of Hearsay

As his first ground for relief, Petitioner contends that his right to a fair trial was violated by the trial court's admission of BC's hearsay statement that Petitioner had assaulted her. (Pet., ECF No. 1, PageID.15.) Petitioner avers that no hearsay exception applied, and that the "details of what was said were later proven incorrect." (*Id.*) According to Petitioner, the admission of this hearsay statement "unfairly bolstered" BC's credibility "in what was a pure credibility contest." (*Id.*)

6

Petitioner raised this claim on direct appeal, and the court of appeals rejected it. First, the court of appeals noted that Petitioner "waived appellate review of this issue by failing to protest the admission of the evidence as an excited utterance." *Guritz*, 2023 WL 2051943, at *2. The court of appeals then went on to state:

> Moreover, even if we assumed that the trial court's decision was flawed, it did not result in a miscarriage of justice. *See* MCL 769.26;[] *People v. McDonald*, 303 Mich. App. 424, 436; 844 N.W.2d 168 (2013). During cross-examination, defense counsel questioned CW regarding a statement CW made to the police in 2017,[4] and the failure to mention that BC disclosed the name of her assailant to him. At that time, CW acknowledged that he misunderstood the defense question and corrected his testimony. CW testified that, during the car ride, BC did not expressly mention [Petitioner] but stated that she was upset because "somebody" was trying to "get with her."[5] Accordingly, CW's testimony did not bolster BC's credibility because CW acknowledged that BC failed to identify [Petitioner] as her assailant when CW drove her to the home where she was dog-sitting. This claim of error does not entitle [Petitioner] to appellate relief.

_____

[4] Although the assault occurred on July 1–2, 2017, the case was not tried until September 2021.

[5] CW acknowledged that he had learned the identity of BC's assailant in light of subsequent contact with her that occurred over time.

*Guritz*, 2023 WL 2051943, at *2 (first footnote omitted).

To the extent that Petitioner asserts that the court of appeals erred in concluding that the testimony given by CW regarding BC's identification of her assailant constituted an excited utterance and, therefore, was admissible under a hearsay exception, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct

appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

It is not inconceivable, however, that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. State court evidentiary rulings, though, "cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Moreover, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue"). Petitioner, however, has not met this difficult standard; he does not even cite any Supreme Court authority in support of this ground for relief.

8

There is nothing inherent in the admission of hearsay testimony generally that offends fundamental principles of justice. In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state court of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

While hearsay itself is not constitutionally impermissible, in some instances, testimony regarding out-of-court statements might raise the specter of a violation of the Confrontation Clause. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). Here, however, no Confrontation Clause violation occurred because BC herself testified at Petitioner's trial.

Petitioner has failed to show that the admission of CW's "hearsay" statement violated his due process rights and, therefore, he has failed to demonstrate that the Michigan Court of Appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground I.

**B.     Ground II—Sufficiency of the Evidence**

As his second ground for relief, Petitioner contends that the evidence presented by the prosecution was insufficient to sustain his CSC-III and assault convictions. According to Petitioner, the complainant "did not describe force or coercion for the alleged sexual assault. [BC] just mainly answered leading questions that [were] presented by the prosecutor[] that force[] was used." (Pet., ECF No. 1, PageID.22.) Petitioner also contends that there was "no evidence of battery, force, and thus no assault with intent to commit sexual penetration." (*Id.*, PageID.23.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable

10

hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658

F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's

sufficiency challenge:

> When reviewing a challenge to the sufficiency of the evidence, this Court reviews
> the evidence de novo. *People v. Kenny*, 332 Mich. App. 394, 402; 956 N.W.2d 562
> (2020). This Court examines the evidence, whether direct or circumstantial, in a
> light most favorable to the prosecution to ascertain whether a rational trier of fact
> could determine that the essential elements of the crime were proven beyond a
> reasonable doubt. *Id.* The jury, however, must weigh the evidence presented and
> evaluate the credibility of the witnesses, *People v. Montague*, 338 Mich. App. 29,
> 45; 979 N.W.2d 406 (2021), and this Court does not interfere with the jury's role
> in rendering those determinations, *People v. Solloway*, 316 Mich. App. 174, 181–
> 182; 891 N.W.2d 255 (2016).

*Guritz*, 2023 WL 2051943, at *3. Although the court of appeals cited state authority as the source

of the standard, the cases cited within *Kenny* identify *Jackson* as the source of the standard. *See*

*People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992).

The state court's application of the correct standard eliminates the possibility that the

resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in

*Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different,"
> "opposite in character or nature," or "mutually opposed." Webster's Third New
> International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests
> that the state court's decision must be substantially different from the relevant
> precedent of this Court. The Fourth Circuit's interpretation of the "contrary to"
> clause accurately reflects this textual meaning. A state-court decision will certainly
> be contrary to our clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our
> cases to the facts of a prisoner's case would not fit comfortably within
> § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court

11

> decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The Michigan Court of Appeals set forth the elements for both CSCI-III and assault with intent to commit criminal sexual conduct involving sexual penetration, and then applied the sufficiency standard as follows:

> In this case, [Petitioner] does not challenge the evidence relating to penetration. Rather, [Petitioner] asserts that the prosecution failed to present sufficient evidence of force because BC did not describe force but answered leading questions that force was used. We disagree.
>
> * * *
>
> In this case, BC's testimony provided sufficient evidence for the jury to find that [Petitioner] used force. BC testified that she encountered [Petitioner] while she was alone in her car that was parked in a field outside of view from those standing at the bonfire. [Petitioner] placed his hand on the back of BC's neck, pushed her head toward his penis, and pressed his penis against her lips. BC held her lips shut. Even so, [Petitioner] managed to push his penis into her mouth. BC pushed back and repeatedly told [Petitioner] "no." Although [Petitioner] knew BC was intoxicated and was physically limited as a result, she expressly rejected his advances and tried to prevent the CSC-III from occurring. Thus, to achieve the CSC-III, [Petitioner] utilized force to accomplish the sexual penetration. Considering BC's testimony in a light most favorable to the prosecution, the jury could reasonably conclude that

[Petitioner] accomplished the sexual penetration by physical force. *See People v. Kline*, 197 Mich. App. 165, 167; 494 N.W.2d 756 (1992) (concluding that there was sufficient evidence for a rational jury to find that the defendant compelled the victim by force or coercion to participate in sexual intercourse because the defendant, who was the 16-year-old victim's stepfather, failed to comply with the victim's requests to stop and one assault occurred in the basement where the victim was isolated from help); *see also Eisen*, 296 Mich. App. at 335 (concluding that force or coercion "exists whenever a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice").

\* \* \*

In this case, BC testified that [Petitioner] placed his hands down her skirt and leggings. She kept shoving [Petitioner's] hands away. [Petitioner] eventually stopped and announced that they should engage in sexual intercourse. BC said that she could not because she was menstruating. [Petitioner] was silent for a moment and then said that he did not care. He got out of the car, went to the driver's side door, opened it, grabbed BC's arms and attempted to pull her out of the car. BC leaned over the center console to prevent [Petitioner] from physically removing her.

Given BC's testimony, a rational jury could find that [Petitioner] committed an assault by grabbing BC's arms and attempting to pull her from the car. *Id.* A rational jury could further infer from [Petitioner's] actions and statements that he attempted to pull BC from the driver's seat of the car to engage in sexual intercourse with her even after she pushed his hands away and told him that she could not have sex. *See Kenny*, 332 Mich. App. at 402. Considering the evidence presented at trial in the light most favorable to the prosecution, there was sufficient evidence for the jury to reasonably find [Petitioner] guilty of assault with the intent to commit CSC involving sexual penetration. *Id.*

*Guritz*, 2023 WL 2051943, at \*3–4. The court of appeals' analysis appears to faithfully track the requirements of *Jackson*. The court reviewed the elements that the prosecutor was required to prove and then looked at the evidence presented to see if there was a basis for a rational trier of fact to find that the essential elements were proven beyond a reasonable doubt.

In his § 2254 petition, Petitioner essentially reiterates the arguments he raised before the court of appeals. He contends that "[t]he description of events, even if [they] were presumed to be true, did not describe, as required by law[,] 'force or coercion.'" (Pet., ECF No. 1, PageID.22.) Petitioner contends that the evidence was insufficient to convict him of CSC-III because BC's "description of how [P]etitioner's penis mysteriously ended up in her mouth, and how his hand

13

was on the back of her head does not itself satisfy force or coercion elements." (*Id.*) Petitioner asserts further that no assault occurred because there was "insufficient evidence [of] force or coercion or that the assault was committed." (*Id.*, PageID.23.) Petitioner also argues that the court of appeals unreasonably stated that Petitioner "does not challenge evidence relating to penetration" when Petitioner asserts that he is fact challenges the conclusion that all of the elements of Mich. Comp. Laws § 750.50b(1)(f)(i)–(v) were met. (*Id.*)

Despite Petitioner's assertions, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

Similarly, Petitioner fails to demonstrate that the inferences identified by the court of appeals are unreasonable. *Jackson* holds that it is the fact-finder's province to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The *Coleman* Court described a reasonable inference as an inference that a rational factfinder could make from the facts. The inferences identified by the court of appeals rationally flow from the underlying facts. The inferences are not compelled by those facts. The inferences may not even be more likely than not; they are simply rational. *Id*. at 656. Nothing more is required.

Essentially, Petitioner argues that because some of BC's testimony was presented via leading questions, it should be disregarded. Petitioner, therefore, invites this Court to reweigh the credibility of BC and resolve all conflicts and make all inferences in his favor. However, it is up

14

to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences— so long as the inferences are rational. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head. Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support the verdict is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground II.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

15

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:      <u>April 29, 2024</u>                      <u>/s/ Robert J. Jonker</u>
                                                         Robert J. Jonker
                                                         United States District Judge

16